**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 1 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

GALE F. BURCH,

Defendant-Appellant.

No. 98-3301

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
### (D.C. No. 98-CV-3284)

Submitted on the briefs:

Gale F. Burch, pro se.

Jackie N. Williams, United States Attorney, Thomas G. Luedke, Assistant U.S. Attorney, Topeka, Kansas, for Plaintiff-Appellee.

Before **BRORBY** , **EBEL** , and **HENRY** , Circuit Judges.

**BRORBY** , Circuit Judge.

Defendant was convicted of conspiring to possess with intent to distribute a controlled substance.  This court affirmed her conviction on May 22, 1997.  She

petitioned for rehearing, and we denied rehearing on June 20, 1997. Defendant

did not petition the United States Supreme Court for a writ of certiorari after her

conviction and sentence were affirmed on direct appeal. On August 31, 1998,

defendant filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or

correct her sentence. The district court dismissed her motion as time-barred and

issued a certificate of appealability. Defendant appeals, and we reverse the

district court's judgment. [1]

The Antiterrorism and Effective Death Penalty Act (AEDPA) amended

28 U.S.C. § 2255 to allow federal prisoners one year from the date on which the

judgment of their conviction became final to file a motion to vacate, set aside

or correct their sentence. This appeal presents the following question, as yet

unanswered by this court: When does the judgment of conviction become final in

the case of a defendant who does not petition the United States Supreme Court for

a writ of certiorari after her conviction was affirmed on appeal?

The two circuits that have answered this question have reached contrary

results. The Seventh Circuit held that, if a federal prisoner does not file a petition

for writ of certiorari with the United States Supreme Court after her conviction is

---

[1]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination
of this appeal.    *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument.

affirmed on appeal, the judgment of conviction is final for purposes of § 2255 when the federal appellate court issues its mandate in the direct criminal appeal. *Gendron v. United States*, 154 F.3d 672, 674 (7th Cir. 1998), *cert. denied*, 119 S. Ct. 1758 (1999). The Third Circuit, on the other hand, held that "a judgment of conviction becomes final within the meaning of § 2255 on the later of (1) the date on which the Supreme Court affirms the conviction and sentence on the merits or denies the defendant's timely filed petition for certiorari, or (2) the date on which the defendant's time for filing a timely petition for certiorari review expires." *Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999) (quotation omitted). [2]

We review this issue of statutory interpretation *de novo*. *See United States v. Shuler*, 181 F.3d 1188, 1189 (10th Cir. 1999). We join the Third Circuit in holding that, for purposes of determining when the limitations period in 28 U.S.C. § 2255(1) begins to run if a defendant does not petition the United States Supreme Court for a writ of certiorari after her direct appeal, her judgment of conviction is final after the time for seeking certiorari review has expired. *Kapral*, 166 F.3d at 570, 577.

---

[2]    We note that, although the district court in this case followed the reasoning and result reached by the Seventh Circuit in *Gendron*, it did not have the benefit of the Third Circuit's analysis in *Kapral* at the time it issued its decision.

I.

In our analysis of this issue, the first place we turn is to the language of the statute. The relevant limitation provision of 28 U.S.C. § 2255 states that the one-year limitation period shall run from "the date on which the judgment of conviction becomes final." *Id.* § 2255(1). The statute does not define when a judgment of conviction becomes final. Like the court in *Kapral*, we recognize that there are several possible meanings of the word "final" in this context. *See Kapral*, 166 F.3d at 569. First, the judgment of conviction could become final when it is entered by the district court. *See* BLACK'S LAW DICTIONARY 567 (6th ed. 1990) (defining a final decision or judgment as one that "leaves nothing open to further dispute and which sets at rest cause of action between parties. One which settles rights of parties respecting the subject-matter of the suit and which concludes them until it is reversed or set aside . . . ."). It could also become final when the court of appeals affirms the conviction or the time for an appeal expires. Finally, the date the judgment of conviction becomes final could be the date on which the Supreme Court affirms on the merits, denies a petition for writ of certiorari, or the time to file a certiorari petition expires. *See id.* (defining a final decision or judgment as "a decision from which no appeal or writ of error can be taken"); *see also Kapral,* 166 F.3d at 570 (quoting WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY OF THE ENGLISH

-4-

LANGUAGE 532 (1989 ed.) as defining "final" in the legal sense as "'precluding further controversy on the questions passed upon'").

We must look to the language and design of the AEDPA to ascertain the plain meaning of the term "final" in § 2255. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). Section 2255 authorizes and addresses the commencement of collateral attack on a sentence. The AEDPA was enacted to constrain the filing of habeas petitions by imposing a time limitation where none existed before. *See Kapral*, 166 F.3d at 571 n.4 (citing legislative history). It would make no sense and would not further judicial efficiency or economy to encourage a collateral attack on a judgment of conviction that was subject to the possibility of direct certiorari review. Allowing such a result would mean that a district or appeals court could be faced with ruling on a habeas petition while Supreme Court review of the underlying conviction and sentence is pending. It is true that this scenario is unlikely because the Supreme Court grants only a very small percentage of certiorari petitions, but the possibility would exist nonetheless. We agree with the Third Circuit that the "AEDPA's purpose is best furthered by an interpretation of § 2255 that recognizes the legal reality that the decision of a court of appeals is subject to further review, and therefore not 'final' within the meaning of § 2255 until direct review has been completed." *Id.* at 571. To that end, read in the context of the AEDPA, § 2255's use of "final"

plainly means "a decision from which no appeal or writ of error can be taken," BLACK'S LAW DICTIONARY 629 (6th ed. 1990). [3] Additionally, we agree that "[r]ecognizing that one is allowed 90 days to file a petition for certiorari does not mitigate the congressional objective of imposing time limits where none previously existed." *Kapral*, 166 F.3d at 571.

## II.

Also relevant to our interpretation of when the limitation period in § 2255 begins to run is the language in § 2244, which sets the parameters of the limitation period for habeas petitions filed by state prisoners. That section states that the one-year limitation period begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The Seventh Circuit, in holding that the time limit in § 2255 runs from the issuance of the mandate by the court of appeals if no certiorari petition is filed, hung its hat on the difference

---

[3] We do not, however, extend the time for the possibility that a party could file a petition for rehearing of a denial of a petition for certiorari. Applying Supreme Court Rule 16.3, we conclude in *United States v. Willis*, No. 98-3244, slip op. at 3-4 (10th Cir. Feb. 1, 2000) (a case being issued contemporaneously with this case) that a judgment of conviction is final when the United States Supreme Court denies certiorari, notwithstanding the possibility that the petitioner could seek rehearing of the denial of certiorari, unless, of course, the Supreme Court actually suspends its denial of certiorari pursuant to Supreme Court Rule 16.3.

in the language used in § 2244(d)(1)(A) and § 2255(1).   *Gendron* , 154 F.3d at 674.  The *Gendron* court relied on the principal of statutory interpretation set forth in *Russello v. United States* , 464 U.S. 16, 23 (1983) (quotation omitted), that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  Thus, *Gendron* reasoned that since § 2244 specifically excludes from the one-year limitation period the time for seeking review, regardless of whether such review is, in fact, sought, and § 2255 does not specifically exclude the time for seeking review, Congress intended to treat the limitation periods of the two sections differently.  154 F.3d at 674.  We find this rationale unpersuasive.

As the concurrence in   *Kapral* deftly recognizes, the principle set forth in *Russello* is "based on the hypothesis of careful draftsmanship."  166 F.3d at 579 (citing *Russello* , 464 U.S. at 23 ("We would not presume to ascribe this difference to a simple mistake in draftsmanship.")) (concurring opinion).  We recognize and agree that the AEDPA is not exactly a model of careful statutory drafting.   *See Kapral* , 166 F.3d at 575 n.7 ("'[I]n a world of silk purses and pigs' ears, [AEDPA] is not a silk purse of the art of statutory drafting.'" (quoting   *Lindh v. Murphy* , 521 U.S. 320, 336 (1997))).  Consequently, we disagree with    *Gendron's*

application of the principal of statutory interpretation set forth in *Russello* as the definitive answer in interpreting § 2255.

Furthermore, we see the *Gendron* approach as flawed because that court did not uniformly apply the statutory interpretation principal it espoused. *Gendron* based its interpretation on the principal that statutory "language will not be implied where it has been excluded." 154 F.3d at 674. In holding that the judgment of conviction is final under § 2255 when the appeals court issues its mandate if no certiorari petition is filed, however, that court did precisely what it said it could not–it implied language in § 2255 that had been excluded. Section 2244(d)(1)(A) speaks of a judgment of conviction being final at "the conclusion of direct review or the expiration of time for seeking such review." The *Gendron* court refused to read the phrase "or the expiration of time for seeking such review" into § 2255, but to interpret the statute as it did, the court necessarily read the phrase "by the conclusion of direct review" into § 2255. Had the *Gendron* court truly applied the *Russello* principle and taken it to its logical conclusion, it would have held that a judgment of conviction is final for purposes of § 2255 when the trial court enters the judgment of conviction on the docket.

In sum, we agree with the Third Circuit that

[t]he omission of § 2244's clarifying language from the mention of "final" in § 2255 is not sufficient to cause us to conclude that Congress intended a different concept of finality for state and federal defendants. . . . [T]hat concept includes the period in which a

-8-

> defendant can seek discretionary review. Prior to the expiration of the time for certiorari review, a conviction is simply not "final" under either provision.

*Kapral*, 166 F.3d at 575. We agree that there is simply no indication that Congress intended to treat state and federal habeas petitioners differently. *See id.* at 575.

### III.

Finally, we find the Supreme Court's definition of "final judgment" in the context of retroactivity analysis instructive to our interpretation of § 2255. In *Griffith v. Kentucky*, 479 U.S. 314, 320-21 (1987), the Court summarized the history of its retroactivity analysis. In that context, the Court stated that a conviction that is "final" means "a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." 479 U.S. at 321 n.6 (quotation omitted); *see also United States v. Cuch*, 79 F.3d 987, 991 n.9 (10th Cir. 1996) (quoting *Griffith* definition of what is meant by a "final conviction" in deciding whether new jurisdictional ruling should be applied retroactively to cases on collateral review). We have previously applied the *Griffith* definition of when a judgment of conviction is "final" in a § 2255 context. *See United States v. Simmonds*, 111 F.3d 737, 744 (10th Cir. 1997) (citing *Cuch* in holding that the prisoner's conviction was final when the Supreme

Court denied his certiorari petition); *see also Bowen v. Roe*, 188 F.3d 1157, 1159-60 (9th Cir. 1999) (applying *Griffith* definition in analyzing when judgment of conviction is final for purposes of one-year limitation in § 2244(d)(1)). [4] Consequently, we apply the *Griffith* definition in this case to hold that defendant's judgment of conviction was not final for purposes of the one-year limitation period in § 2255 until the time during which she could have filed a petition for writ of certiorari had expired. This holding is also consistent with our analysis in *Rhine v. Boone*, 182 F.3d 1153, 1155-56 (10th Cir. 1999) (comparing § 2244(d)(2) with § 2244(d)(1)(A), and stating in dicta that we have applied the *Griffith* definition to § 2244 and § 2255 in unpublished decisions), *cert. denied*, 120 S. Ct. 808 (2000).

## IV.

For the foregoing reasons, we join the holding of the Third Circuit in *Kapral* and reject the Seventh Circuit's conclusion in *Gendron.* We hold that, for

---

[4] We note that we have also applied the *Griffith* definition to analysis of the one-year limitation periods of § 2244 and § 2255 in several unpublished orders and judgments. *See Coelho v. Romero*, No. 98-2282, 1999 WL 430166, at *1 (10th Cir. June 28, 1999) (§ 2244) (unpublished); *Harris v. Champion*, No. 98-6318, 1999 WL 84476, at **1 (10th Cir. Feb. 22, 1999) (§ 2244) (unpublished); *United States v. Lacey*, No. 98-3030, 1998 WL 777067, at **1 (10th Cir. Oct. 27, 1998) (§ 2255) (unpublished); *Sierra v. Evans*, No. 98-6040, 1998 WL 712578, at **2 (10th Cir. Oct. 13, 1998) (§ 2244) (unpublished); *United States v. Moss*, No. 97-6277, 1998 WL 327868, at **1 (10th Cir. June 18, 1998) (§ 2255) (unpublished).

purposes of § 2255, if a prisoner does not file a petition for writ of certiorari with the United States Supreme Court after her direct appeal, the one-year limitation period begins to run when the time for filing a certiorari petition expires. In this case, the one-year limitation period began to run on September 19, 1997, ninety days after this court denied defendant's petition for rehearing. *See* Sup. Ct. R. 13.3 (a petition for writ of certiorari to review a judgment must be filed within ninety days after denial of a timely petition for rehearing, if one is filed). Defendant filed her § 2255 motion on August 31, 1998. Consequently, her § 2255 motion was timely. We REVERSE the district court's judgment and REMAND this case to the district court for further proceedings consistent with this order and judgment.