**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 28 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

EUGENE CHEE,

    Defendant-Appellant.

No. 03-4057
(District of Utah)
(D.C. No. 02-CR-66-TC)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

## I.    INTRODUCTION

Defendant Eugene Chee was convicted by a jury for aggravated sexual

abuse and abusive sexual contact while within Indian Country.  At sentencing, the

district court concluded Chee's base offense level was thirty-five and his criminal

history was category I.  The district court made a two-level upward adjustment to

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

his base offense level based on obstruction of justice and sentenced Chee to 210 months' incarceration. Chee appeals his sentence, arguing the district court erred by including the adjustment. This court exercises jurisdiction pursuant to 18 U.S.C. § 3742(a) and **affirms** Chee's sentence.

## II.    BACKGROUND

After receiving information from the victim's mother, FBI agents began an investigation into whether Chee had sexually abused a young girl eleven years earlier. Agent Jim Lyman and Navajo Nation Criminal Investigator Michael John located Chee near a visitors' center in Monument Valley, Utah. Lyman and John asked Chee if he would be willing to speak with them privately and Chee agreed. All three rode to the visitors' center, where Lyman interviewed Chee in an unused office. During the interview Chee admitted that several years earlier there had been two incidents of sexually related contact between himself and his stepdaughter who was six years old at the time. Chee described taking the victim into a bedroom to show her "how our babies [are] made or where do they come from." Chee stated he had acted in response to questions from the victim. Chee also described another incident during which he had the victim wash his genitals while he was in the bath tub. Chee stated he asked for the victim's assistance in washing because he had injured his hands in a fall. Agent Lyman recorded these descriptions in writing during the interview and reviewed the contents of his

description with Chee. At trial, Lyman testified that Chee specifically approved the descriptions and did not ask him to make any changes. Chee testified, however, that the agents had forced him to include damaging details within the descriptions.

Agent Lyman asked Chee to take a polygraph examination. Agent Trace Kirk conducted the examination, during which Chee again described the two incidents. After describing the incidents to Kirk, Chee himself recorded his description in writing. After Chee had written the descriptions, Lyman and Kirk compared the two written descriptions and pointed out some details missing in the version Chee had written. Kirk testified that Chee voluntarily added details to his written statement after he and Lyman pointed out the inconsistencies.

At trial, Chee testified on his own behalf and admitted he had signed the written statements. Chee testified that the two incidents occurred but denied he had been motivated by sexual gratification and challenged certain details of the written statements. Chee also asserted there had been no sexual contact between himself and the victim during the incident in the bedroom. Chee stated the agents had forced him to include the damaging details within the descriptions.

The jury found Chee guilty. At sentencing, the government sought an upward adjustment for obstruction of justice under § 3C1.1 of the United States Sentencing Guidelines ("U.S.S.G."). The government argued Chee had committed perjury while testifying at trial. The district court agreed with the

government and adjusted Chee's offense level accordingly. Chee appeals, arguing the district court erred in concluding an adjustment was warranted because Chee had consistently maintained he was coerced into adding details to his statements and he did not willfully impede justice.[1]

## III. DISCUSSION

The U.S. Sentencing Guidelines allow an upward adjustment to the base offense level for the obstruction of justice. *See* U.S.S.G., § 3C1.1. When examining an adjustment under U.S.S.G. § 3C1.1, this court reviews the district court's factual findings for clear error and its legal interpretations *de novo*. *United States v. Hawthorne*, 316 F.3d 1140, 1145 (10th Cir. 2003).

The sentencing guidelines permit an adjustment for obstruction of justice based on perjury. *See* U.S.S.G. § 3C1.1, cmt. n.4(b). In *United States v. Dunnigan*, the Supreme Court determined that for the purposes of § 3C1.1, a witness commits perjury by (1) giving false testimony under oath (2) concerning a material matter (3) with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory. 507 U.S. 87, 95 (1993). A district court's findings regarding the obstruction of justice adjustment must encompass all of the factual predicates of perjury, but generalized findings will

---

[1] We admonish defense counsel for failing to comply with 10th Cir. R. 28.2(A)(2) by failing to attach to his brief a copy of the transcript of the district court's pronouncement at the sentencing hearing.

suffice. *Id*. Under the law of this circuit, the district court must identify the perjurious testimony before making an adjustment under § 3C1.1. *United States v. Massey*, 48 F.3d 1560, 1573 (10th Cir. 1995).

Chee concedes his testimony concerned a material matter, but argues the district court failed to find he made a false statement under oath and failed to find he acted willfully. Chee also argues that he did not, in fact, willfully commit perjury.

**A.      The false statement**

At the sentencing hearing the district court stated: "[W]hen [Chee] said that he did these things because–not for any sexual gratification but because he wanted to teach her about the birds and the bees, I really found that to be false." Thus, the district court found specific testimony by Chee to be false. This is a sufficient finding to meet the requirements of *Dunnigan*. *See Hawthorne,* 316 F.3d at 1146.

The district court's finding that Chee's testimony was false is not clearly erroneous. The district court found the trial testimony of the victim to be credible. During her testimony the victim graphically described the encounters with Chee and the sexual contact which occurred. Likewise, the victim described Chee's sexual excitement during the encounters. In addition, the testimony of Lyman and Kirk regarding the statements Chee made to them also contradicted Chee's testimony. Both agents testified Chee freely described having sexual

contact with the victim. Thus, the district court's conclusion that Chee's testimony was false is not clearly erroneous.

Chee also argues the district court should not have concluded he committed perjury because he consistently maintained the written statements were inaccurate and he was forced to add the damning details.[2] Chee compares his situation to the facts in *United States v. Alexander*, 292 F.3d 1226 (10th Cir. 2002). In *Alexander*, the defendant first testified in a suppression hearing that he had not waived his Miranda rights. *Id*. at 1233. After the court denied his motion to suppress, the defendant testified he had voluntarily waived his rights. *Id*. at 1233-34. The district court adjusted the defendant's sentence pursuant to § 3C1.1. *Id*. Chee argues that unlike the defendant in *Alexander*, he has consistently maintained the statements he gave to the agents were inaccurate. Chee's argument, however, is misplaced.

In *Alexander*, this court upheld the adjustment not based on the perjured testimony itself, but on the obstruction of justice caused by the defendant pursuing a suppression hearing with the knowledge that his argument for

---

[2] Chee separately argues that the district court made insufficient findings to support an upward adjustment for perjury based on Chee's testimony concerning coercion. It is true that the district court also noted Chee's testimony concerning coercion was perjury. In deciding to make the adjustment, however, the district court's focus was clearly on Chee's testimony describing the encounters as non-sexual in nature. Accordingly, it is not necessary to analyze whether the district court's findings regarding the testimony on coercion were sufficient under *Dunnigan*.

suppression had no basis in fact. *Id.* at 1235-36. Thus, the decision in *Alexander* says nothing concerning the situation in this case. In *Dunnigan*, the Supreme Court held there was "ample support" for an upward adjustment when the defendant's testimony was contradicted by the other evidence presented at trial. *Dunnigan*, 507 U.S. at 95-96. Likewise in *Hawthorne*, the defendant's mere statement that he was presenting his version of the events in good faith did not prevent this court from concluding the evidence supported an adjustment for perjury. *See Hawthorne*, 316 F.3d at 1147-48. As discussed above, there was substantial evidence that the testimony Chee gave at trial was false. Accordingly, the district court's finding that Chee's testimony was false is not clearly erroneous.

**B.     Willfulness**

At the sentencing hearing, the district court stated: "[w]hen Mr. Chee said that what he was doing was not for physical gratification but simply to teach the victim about the birds and the bees, and all these times, I find that that was knowing perjury." This finding is sufficient to meet the requirements of *Dunnigan*. *See Dunnigan,* 507 U.S. at 95.

In addition, the district court's factual finding that Chee willfully made false statements under oath is not clearly erroneous. Chee argues his testimony was not willfully false because, in light of the eleven years between the sexual abuse and the trial his memory of the events might not have been entirely clear.

-7-

Chee maintains he could not have been committing perjury merely by presenting his version of the events as he remembers them. The testimony of the agents, however, supports the district court's conclusion that Chee knew his testimony to be false when he gave it.

At trial, Chee denied having sexual contact with the victim. Chee's denial involved some of the same details he initially left out in the written statement given to Kirk. Kirk testified about the written description of the events Chee recorded during their interview. In the written statement, Chee first left out certain details about the events. Noting the discrepancy between the statement Chee had given Lyman and the one Chee had written for Kirk, Kirk asked Chee which statement was true. Kirk testified Chee acknowledged the statement given to Lyman was true. In addition, the written statement recorded by agent Lyman contained Chee's affirmation that it was accurate. Thus, the district court's conclusion that Chee willfully presented false testimony was not clearly erroneous.

**IV. CONCLUSION**

For the foregoing reasons, this court **affirms** the district court's upward adjustment based on perjury.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge